## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AYANNA D. DAVIS,**<br>    **2710 Neman Court**<br>    **Bowie, Maryland 20716,**<br><br>        **Plaintiff,**<br><br>   **v.**<br><br>**NATIONAL RAILROAD PASSENGER,**<br>**CORPORATION d/b/a AMTRAK,**<br>    **60 Massachusetts Avenue, N.E.**<br>    **Washington, D.C.  20002**<br><br>        **Defendant,**<br><br>**SERVE:   Mr. Joseph H. Boardman,**<br>        **President and C.E.O.**<br>        **60 Massachusetts Avenue, N.E.**<br>        **Washington, D.C.  20002** | **Case No: _____**<br><br><br>**Jury Requested** |

## CIVIL COMPLAINT

   **NOW COMES** Plaintiff, Ayanna D. Davis, by and through her undersigned attorney, and, pursuant to Fed. R. Civ. P. 8 and 10, files this civil complaint for damages.  Plaintiff states herein as follows:

### JURISDICTION AND VENUE

1.    This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3, 42 U.S.C. § 1981 and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§2-1401.11(a)(1) and 2-1402.61(a).   Because this claim asserts rights arising under federal law, this Court has original jurisdiction over the claims asserted in this Complaint.   Further, because Plaintiff's claims under the DCHRA arise from the same operative facts, this Court should exercise its pendant jurisdiction over Plaintiff's state law claims.

1

2.      The acts alleged in this Complaint occurred within this judicial district and Defendant is

an employer that is subject to the jurisdiction of this Court pursuant to Title VII and the

DCHRA.

## PARTIES

3.      Plaintiff, Ayanna D. Davis, is an African American female citizen of the United States and

resides in the State of Maryland.   At all times relevant to this Complaint, Plaintiff was an

"employee" within the meaning of Title VII and the DCHRA.

4.      Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") is a partially

government funded corporation providing inter-city railroad passenger service throughout

the contiguous United States.   At all times relevant to this Complaint, Defendant was an

"employer" within the meaning of Title VII and the DCHRA.

## ADMINISTRATIVE PROCEDURES

5.      On September 24, 2014, Plaintiff timely filed an administrative charge of discrimination

with the Equal Employment Opportunity Commission, alleging that she unlawfully had

been discriminated against by Defendant because of her race and sex in violation of Title

VII and the DCHRA.   It was assigned Charge No. 570-2014-02115.   That charge of

discrimination was dual-filed with the D.C. Office of Human Rights.

6.      On March 20, 2015, Plaintiff informed Defendant of her intent to amend her charge to

address retaliatory actions taken by Defendant.

7.      On October 20, 2015, Plaintiff amended her charge of discrimination to include a claim of

unlawful retaliation.   That amended charge of discrimination was dual-filed with the D.C.

Office of Human Rights.

8.       More than 180 days have elapsed since the charge of discrimination was filed and the

EEOC has not issued a determination.

## FACTS COMMON TO ALL COUNTS

9.  At all times relevant to this Complaint, Plaintiff has been employed by Defendant.

10. Plaintiff began her employment with Defendant on August 11, 2008, as an assistant conductor.

11. During her tenure with Defendant, Plaintiff always has been at least a successful performer and, prior to August 2014, never had received any discipline.

12. On August 28, 2014, Plaintiff, along with her union representative, was summoned to a meeting with Trainmasters Moises Mojica and Phyllis Gaskins-Borkins, where she was informed that she had received a customer complaint.  She observed that her supervisors had prepared an "Out of Service" notice prior to the meeting.

13. This was the first customer complaint that Plaintiff had received during her tenure at Amtrak.

14. During the August 28, 2014 meeting, Plaintiff explained the circumstances of the customer complaint and her justifications for her actions.  Although Plaintiff provided correct and reasonable explanations for her actions, those explanations were ignored by her interrogators.

15. On August 28, 2014, Plaintiff was informed that she being placed in "out of service" status pending investigation and was required to surrender her credentials.  When Plaintiff asked Mr. Mojica and Ms. Gaskins-Borkins whether the disciplined being imposed on her was consistent with discipline that had been administered to other similarly situated employees, they responded that the level of discipline was within management's discretion.

16. Subsequently, Plaintiff's union representative informed her that the reason for the severe discipline was that the customer that made the complaint was a friend of Amtrak's Deputy General Superintendent, Michael Sherlock (Caucasian male).

17.     On August 29, 2014, Plaintiff received a charging document, charging her with violating Amtrak's Standards of Excellence for professional conduct and attending to duties, as well as NORAC Operating Rule K, concerning courtesy towards the public and patrons.

18.     On September 4, 2015, Plaintiff's union representative informed Plaintiff that a union representative had met with Defendant's president and chief executive officer about this matter.

19.     On September 5, 2014, Plaintiff's union representative explained that she had several options, including going to trial and possibly facing termination, and accepting a waiver of rights and accepting a sizeable suspension.  After several discussions, the union representative informed Plaintiff that she was being offered a 10-day suspension and a waiver of rights.

20.     On September 6, 2015, Plaintiff informed her union representative that she would accept the 10-day suspension, but denied she committed any wrongdoing.

21.     On September 8, 2014, Plaintiff met with Mr. Mojica, signed the requisite documetation and told him that she thought that she had been "railroaded."  Mr. Mojica informed Plaintiff that "there was a new sheriff in town," Superintendent Shawn Gordon (Caucasian male). Mr. Mojica also returned Plaintiff's credentials and told her that he was reinstating her to service.

22.     Plaintiff's union representative informed her that there had been a meeting with Mr. Gordon on September 8, 2015, in which the severity of Plaintiff's discipline was discussed.

23.     During Mr. Gordon's tenure as "the new sheriff in town," other co-workers, not in Plaintiff's protected classifications, have not been pulled out of service and forced to serve a 10-day suspension upon their receipt of one or multiple customer complaints, including, but not limited to, Lynn Evans (Caucasian female), Melissa Rose (Caucasian female), T.C.

Williams (Caucasian male), Patrick Graham (Caucasian male), Carlos Cruz (Hispanic male), Alex Dvoynoy (Caucasian male), Martin Walsh (Caucasian male) and Christopher Mooreland (Caucasian male).

24.     Plaintiff was suspended and out of service from August 29 through September 7 2014.

25.     On September 26, 2014, Plaintiff filed her administrative charge of discrimination with the EEOC.  Defendant and Mr. Gordon received notice of that charge of discrimination on or before October 13, 2014.

26.     Subsequent to Plaintiff's filing of her EEOC charge, she has experienced adverse actions in retaliation for her having participating in EEOC activities and opposing unlawful employment practices, including, but not limited to, being charged with further misconduct and having her medical insurance suspended temporarily.

27.     On March 3, 2015, Plaintiff was informed that she was being investigated for sitting in a seat reading an unauthorized book while her crew members were addressing ongoing mechanical issues throughout the train.   She was charged with violating Amtrak's Standards of Excellence for attending to duties and NORAC Rule E, prohibited behaviors.

28.     In the charging document, Plaintiff was charged with misconduct on Amtrak Train 159, on February 16, 2015 for reading an unauthorized book or publication while there were mechanical issues with the train, ostensibly related to train bathrooms not working during the route.

29.     However, no work order exists for any mechanical issues on that train on that date.  Nor did the train's conductor and assistant conductors observe or have any such "mechanical issues" reported to them.

30.     During the ensuing investigation, Plaintiff told her managers that she had engaged in the alleged misconduct, informed her managers about this discrepancy involving Train 159

and explained that other employees, not in her protected classifications or who had not engaged in protected EEO activities or opposed unlawful employment actions were not disciplined for similar misconduct.

31. Those employees include, but are not limited to Kourtney Jones (African American male), David Gussom (African American male), Barbara Aylward (Caucasian female), Andrea Wiegle (Caucasian female), Patrick Graham (Caucasian male) and Daryl Bridgeman (African American male observed by Mr. Sherlock performing an unauthorized crossword puzzle).

32. Plaintiff was informed that she was being suspended for fifteen (15) days for violating the Standards of Excellence and Work Rules for reading an unauthorized book or publication.

33. No other similarly-situated employees have had similar discipline imposed for reading unauthorized books or publications.

34. On March 20, 2015, Plaintiff informed the EEOC that she was experiencing unlawful retaliation from Defendant.  An amended charge of discrimination was filed with the EEOC.

35. Plaintiff suffered adverse employment actions, including, but not limited to discipline, including a 15-day unpaid suspension and temporary suspension of her medical insurance. Plaintiff has also been excluded from promotional opportunities.

36. Plaintiff's race and gender and her having opposed unlawful employment practices and participating in EEOC proceedings were motivating factors in the discipline that has been imposed on Plaintiff.

37. But for Plaintiff having participated in EEOC activities and opposing unlawful employment practices, she would not have been disciplined in Spring 2015 and had her medical insurance terminated.

38.  The reasons articulated by Defendant for the adverse actions taken against Plaintiff's non-selection are false and pretextual.

39.  As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, denial of promotional opportunities, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this lawsuit.

## <u>COUNT I</u>

## <u>RACE DISCRIMINATION IN VIOLATION OF §703<br>OF THE CIVIL RIGHTS ACT OF 1964</u>

40.  Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation contained in ¶¶ 1 through 39 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

41.  Plaintiff's race is a classification protected under § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

42.  Defendant disciplined Plaintiff in August 2014 and March 2015 for alleged violations of Defendant's Standards of Excellence and the NORAC Work Rules.  Similarly-situated co-workers not of Plaintiff's race that actually engaged in similar or more severe violations of those Standards of Excellence and Work Rules received less severe discipline than Plaintiff.

43.  Plaintiff's race was a motivating factor in the decisions to discipline Plaintiff.

44.  Additionally, the reasons articulated by Defendant for Plaintiff's discipline are false and pretextual.

45.  Defendant disciplined Plaintiff in violation of § 703 of Title VII, 42 U.S.C. § 2000e-2(a)(1).

46.  As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages, denial of promotion opportunities, loss

of prestige, severe emotional distress, embarrassment, loss of status, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

### GENDER DISCRIMINATION IN VIOLATION OF § 704
### OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

47.   Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation contained in ¶¶ 1 through 46 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

48.   Plaintiff's gender is a classification protected under § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

49.   Defendant disciplined Plaintiff in August 2014 and March 2015 for alleged violations of Defendant's Standards of Excellence and the NORAC Work Rules.  Similarly-situated co-workers not of Plaintiff's gender that actually engaged in similar or more severe violations of those Standards of Excellence and Work Rules received less severe discipline than Plaintiff.

50.   Plaintiff's gender was a motivating factor in the decisions to discipline Plaintiff.

51.   Additionally, the reasons articulated by Defendant for Plaintiff's discipline are false and pretextual.

52.   Defendant disciplined Plaintiff in violation of § 703 of Title VII, 42 U.S.C. § 2000e-2(a)(1).

53.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages, denial of promotion opportunities, loss of prestige, severe emotional distress, embarrassment, loss of status, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

## UNLAWFUL RETALIATION IN VIOLATION
## OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

54.     Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation

        contained in ¶¶ 1 through 53 of this Complaint as though they are fully set forth herein,

        and makes them part hereof and, furthermore, states as follows:

55.     Between August 2014 and the present date, Plaintiff has taken steps to oppose unlawful

        employment practices under Title VII by making formal and informal complaints and by

        participating in proceedings before the EEOC authorized by Title VII.  At all times relevant

        to this Complaint, Plaintiff's supervisors were aware of her protected activities.

56.     After Plaintiff opposed practices made unlawful by Title VII and participated in activities

        protected under Title VII, Plaintiff endured unlawful retaliation from her supervisors,

        including, but not limited to cancellation of her health insurance, denial of promotion

        opportunities, and further disciplinary actions. Similarly-situated co-workers that actually

        had engaged in violations of those Standards of Excellence and Work Rules and that had

        not engaged in protected activities were not similarly disciplined.

57.     Because of Defendant's continued egregious retaliation campaign, beginning in August

        2014 and continuing to the present time, Plaintiff has suffered immediate economic losses

        and loss of job status and prestige.

58.     But for Plaintiff's opposition to practices made unlawful under Title VII and her

        participation in protected EEO activities, the unlawful retaliation complained of above

        would not have occurred.

59.     The reasons articulated by Defendants for its unlawfully retaliating against Plaintiff are

        false and pretextual.

60.     Defendant's unlawful retaliatory actions were unlawful and in violation of § 704 of Title

VII, 42 U.S.C. § 2000e-3.

61.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, denial of promotion opportunities, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## RACIAL DISCRIMINATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866 & 42 U.S.C. § 1981

62.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 61 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

63.    At all times relevant to this Complaint, Plaintiff, an African American citizen of the United States, enjoyed the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens of the United States, as provided in the Civil Rights Act of 1866, 42 U.S.C. § 1981.

64.    Defendant disciplined Plaintiff in August 2014 and March 2015 for alleged violations of Defendant's Standards of Excellence and the NORAC Work Rules.  Similarly-situated co-workers not of Plaintiff's race that actually engaged in similar or more severe violations of those Standards of Excellence and Work Rules received less severe discipline than Plaintiff.

65.    Plaintiff's race was a motivating factor in the decisions to discipline Plaintiff.

66.    Additionally, the reasons articulated by Defendant for Plaintiff's discipline are false and pretextual.

67.    Defendant disciplined Plaintiff in violation of 42 U.S.C. § 1981 by depriving her of her

right to make and enforce contracts and the full and equal benefit of all laws as are enjoyed by white citizens of the United States.

68. Defendant discriminated against Plaintiff based upon her race, by disciplining her because of her race.

69. Defendant's actions were taken with malice or reckless indifference to the federally protected rights of Plaintiff, entitling Plaintiff to an award of punitive damages against Defendant.

70. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, denial of promotion opportunities, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

## RACE DISCRIMINATION
## IN VIOLATION OF THE DCHRA

71. Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation contained in ¶¶ 1 through 70 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

72. Plaintiff's race is a classification protected under § 2-1401.11(a)(1) of the DCHRA.

73. Defendant disciplined Plaintiff in August 2014 and March 2015 for alleged violations of Defendant's Standards of Excellence and the NORAC Work Rules. Similarly-situated co-workers not of Plaintiff's race that actually engaged in similar or more severe violations of those Standards of Excellence and Work Rules received less severe discipline than Plaintiff.

74. Plaintiff's race was a motivating factor in the decisions to discipline Plaintiff.

75. Additionally, the reasons articulated by Defendant for Plaintiff's discipline are false and

pretextual.

76.     Defendant disciplined Plaintiff in violation of § 2-1401.11(a)(1) of the DCHRA.

77.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic

damages, including, but not limited to, lost wages, denial of promotion opportunities, loss

of prestige, severe emotional distress, embarrassment, loss of status, medical expenses,

attorney's fees and costs related to this litigation.

**COUNT VI**

**GENDER DISCRIMINATION IN VIOLATION OF THE DCHRA**

78.     Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation

contained in ¶¶ 1 through 77 of this Complaint as though they are fully set forth herein,

and makes them part hereof and, furthermore, states as follows:

79.     Plaintiff's gender is a classification protected under § 2-1401.11(a)(1) of the DCHRA.

80.     Defendant disciplined Plaintiff in August 2014 and March 2015 for alleged violations of

Defendant's Standards of Excellence and the NORAC Work Rules.  Similarly-situated co-

workers not of Plaintiff's gender that actually engaged in similar or more severe violations

of those Standards of Excellence and Work Rules received less severe discipline than

Plaintiff.

81.     Plaintiff's gender was a motivating factor in the decisions to discipline Plaintiff.

82.     Additionally, the reasons articulated by Defendant for Plaintiff's discipline are false and

pretextual.

83.     Defendant disciplined Plaintiff in violation of § 2-1401.11(a)(1) of the DCHRA.

84.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic

damages, including, but not limited to, lost wages, denial of promotion opportunities, loss

of prestige, severe emotional distress, embarrassment, loss of status, medical expenses,

attorney's fees and costs related to this litigation.

## COUNT VII

## UNLAWFUL RETALIATION IN VIOLATION OF THE DCHRA

85.     Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation contained in ¶¶ 1 through 84 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

86.     Between August 2014 and the present date, Plaintiff has taken steps to oppose unlawful employment practices under DCHRA by making formal and informal complaints and by participating in proceedings before the D.C. Office of Human Rights authorized by the DCHRA.  At all times relevant to this Complaint, Plaintiff's supervisors were aware of her protected activities.

87.     After Plaintiff opposed practices made unlawful by the DCHRA and participated in activities protected under the DCHRA, Plaintiff endured unlawful retaliation from her supervisors, including, but not limited to cancellation of her health insurance, denial of promotion opportunities, and further disciplinary actions. Similarly-situated co-workers that actually had engaged in violations of those Standards of Excellence and Work Rules and that had not engaged in protected activities were not similarly disciplined.

88.     Because of Defendant's continued egregious retaliation campaign, beginning in August 2014 and continuing to the present time, Plaintiff has suffered immediate economic losses and loss of job status and prestige.

89.     But for Plaintiff's opposition to practices made unlawful under the DCHRA and her participation in protected EEO activities, the unlawful retaliation complained of above would not have occurred.

90.     The reasons articulated by Defendants for its unlawfully retaliating against Plaintiff are

false and pretextual.

91.   Defendant's unlawful retaliatory actions were unlawful and in violation of § 2-1402.61(a)
      of the DCHRA.

92.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic
      damages, including, but not limited to, lost wages and benefits, denial of promotion
      opportunities, loss of prestige, severe emotional distress, medical expenses, attorney's fees
      and costs related to this litigation.

## COUNT VIII

## UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

93.   Plaintiff repeats, re-alleges and incorporates by reference, each and every factual allegation
      contained in ¶¶ 1 through 92 of this Complaint as though they are fully set forth herein,
      and makes them part hereof and, furthermore, states as follows:

94.   Between August 2014 and the present date, Plaintiff has taken steps to oppose unlawful
      employment practices under 42 U.S.C. § 1981 by making formal and informal complaints
      of illegal racial discrimination.   At all times relevant to this Complaint, Plaintiff's
      supervisors were aware of her protected activities.

95.   After Plaintiff opposed practices made unlawful by 42 U.S.C. § 1981 and participated in
      activities protected under 42 U.S.C. § 1981, Plaintiff endured unlawful retaliation from her
      supervisors, including, but not limited to cancellation of her health insurance, denial of
      promotion opportunities, and further disciplinary actions. Similarly-situated co-workers
      that actually had engaged in violations of those Standards of Excellence and Work Rules
      and that had not engaged in protected activities were not similarly disciplined.

96.   Because of Defendant's continued egregious retaliation campaign, beginning in August
      2014 and continuing to the present time, Plaintiff has suffered immediate economic losses

and loss of job status and prestige.

97.  But for Plaintiff's opposition to practices in violations under 42 U.S.C. § 1981 and her participation in protected activities, the unlawful retaliation complained of above would not have occurred.

98.  The reasons articulated by Defendants for its unlawfully retaliating against Plaintiff are false and pretextual.

99.  Defendant's unlawful retaliatory actions were unlawful and in violation of 42 U.S.C. § 1981 by depriving her of her right to make and enforce contracts and the full and equal benefit of all laws as are enjoyed by white citizens of the United States.

100.  As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, denial of promotion opportunities, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court grant her the following relief, namely:

(i)     That this Court determine that the employment practices complained of in this Complaint are unlawful in that they violate the Title VII and the DCHRA;

(ii)    That Defendant pays Plaintiff the sum of $300,000 for her actual and compensatory damages and any and all equitable relief; and

(iii)   That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees incurred in connection with this action.

DATED:  January 24, 2016.

Respectfully submitted,

Nathaniel D. Johnson  (MD#14729)
Attorney for Plaintiff
The Johnson Law Office, LLC
10665 Stanhaven Place, Suite 3101
White Plains, Maryland 20695
(301) 645-9103 (Phone)/888-492-9434 (Fax)
ndjesquire@gmail.com